| UNITED STATES DISTRICT COURT | SOUTHERN DISTRICT OF TEXAS<br>HOUSTON DIVISION |
|---|---|

| | | |
|---|---|---|
| ALEXEY REVTOVICH,<br><br>*Plaintiff*,<br><br>v.<br><br>WILLIAM MARSH RICE UNIVERSITY D/B/A RICE UNIVERSITY,<br><br>*Defendant*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | No. 4:26-cv-09631<br>Jury |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff Alexey Revtovich (referred to as "Plaintiff" or "Revtovich") files his Original Complaint against Defendant William Marsh Rice University d/b/a Rice University (referred to as "Defendant" or "Rice"), showing the court as follows:

1. Plaintiff, a male, was subjected to sex-based disparate treatment at Rice. His supervisor favored female employees in compensation, work assignments, and leave, and publicly disparaged males. After Plaintiff complained to Human Resources, Rice announced that his position would be eliminated for lack of funding while directing funds toward a female replacement. Rice thereafter restricted his work and terminated his employment. Plaintiff brings this action for sex discrimination, retaliation, and a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII"), and the Texas Commission on Human Rights Act, Tex. Lab. Code ch. 21 ("TCHRA").

## I. THE PARTIES & JURISDICTION

2. Plaintiff Alexey Revtovich is a natural person residing in Houston, Texas.

3. Defendant William Marsh Rice University is a Texas non-profit corporation and private institution of higher education conducting business in Houston, Harris County, Texas. Rice may be served with summons through its authorized attorney or agent within its Office of General Counsel, located at 360 Allen Center, 6100 Main Street, Houston, Texas 77005, or wherever it may be found.

4. Rice is an "employer" within the meaning of 42 U.S.C. § 2000e(b) and Tex. Lab. Code § 21.002(8) because it is engaged in an industry affecting commerce and employed fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year. At all relevant times, Rice employed more than 500 employees for each working day in each of twenty or more calendar weeks in 2024, 2025, and 2026.

5. Plaintiff was Rice's "employee" within the meaning of 42 U.S.C. § 2000e(f) and Tex. Lab. Code § 21.002(7).

6. Whenever it is alleged that Rice committed any act or omission, it is meant that Rice's officers, directors, vice-principals, agents, servants or employees committed such act or omission and that, at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Rice or was done in the routine and normal course and scope of employment of Rice's officers, directors, vice-principals, agents, servants or employees.

7. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(4) and 42 U.S.C. § 2000e-5(f)(3) because Plaintiff's Title VII claims arise under the laws of the United States.

8. Pursuant to 28 U.S.C. § 1367(a), the Court has supplemental jurisdiction over the state law claims, which are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the U.S. Constitution.

9. Venue is proper in the Southern District of Texas under 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices were committed in this District, the employment records relevant to those practices are maintained and administered in this District, and Plaintiff would have continued working in this District but for those practices. Venue is also proper under 28 U.S.C. § 1391(b). The Houston Division is proper because the events giving rise to this action occurred in Harris County, Texas. 28 U.S.C. § 124(b)(2).

## II. FACTUAL BACKGROUND

10. Rice University is a private research university located in Houston, Texas, that operates research laboratories, including the laboratory in which Plaintiff worked.

11. Rice employed Revtovich beginning in January 2016.

12. At the time Rice terminated him on July 16, 2025, he held the position of Laboratory Management Specialist II.

13. Plaintiff reported directly to Dr. Natasha Kirienko, a female.

14. Dr. Kirienko was the principal investigator for the laboratory. Rice authorized her to control the laboratory's funding, staffing, work assignments, leave approvals, and

compensation recommendations, and to make or effectively recommend decisions to hire, discipline, and terminate laboratory employees, including Plaintiff.

15. Dr. Kirienko supervised a laboratory of approximately sixteen individuals. Only three were male, including Revtovich and two undergraduate students.

16. Throughout Plaintiff's employment, Dr. Kirienko treated him less favorably than female employees.

17. In weekly laboratory meetings throughout his employment, she stated that "females work better than males," and told Plaintiff that his wife, who had previously worked in the laboratory, was more valuable than he was.

18. Dr. Kirienko frequently belittled Plaintiff in front of coworkers and dismissed his professional contributions.

19. She instructed laboratory members not to use software tools Plaintiff developed and told him to "move on" when he attempted to contribute during meetings, while offering constructive feedback to female employees.

20. Dr. Kirienko also assigned Plaintiff weekend work and other additional duties without providing the compensatory time afforded to female coworkers who worked comparable schedules.

21. She required him to prepare instructional materials for a course outside his regular laboratory work but refused to compensate him for that work.

22. Although Rice had allocated funds for Plaintiff's course-related work, Dr. Kirienko directed those funds to a performance bonus for a female coworker instead.

23. She also required Plaintiff to perform personal errands unrelated to his university duties, including caring for her cat (cleaning out the litter box) and assisting with her daughter's birthday party.

24. Female employees were not required to perform comparable personal work.

25. Dr. Kirienko restricted Plaintiff's ability to use accrued vacation time, causing him to lose the opportunity to use approximately 168 hours of paid leave annually, while regularly permitting his female coworkers to take their earned time off.

26. On at least one occasion, she required Plaintiff to report to the laboratory during dangerous winter weather despite university instructions that employees remain at home, while female employees were not similarly required to travel to campus.

27. During Plaintiff's employment, a university-wide compensation review determined that Plaintiff was underpaid in comparison to his coworkers.

28. Instead of correcting the disparity, Dr. Kirienko sought to lower his pay grade without reducing his duties.

29. By contrast, she approved an increase from $42,000 to $48,000 for a recently hired female employee, Bernadetta Meika, even though Rice had recommended an increase only to $42,500.

30. Each paycheck Plaintiff received through the end of his employment, including every paycheck within the 300 days before he filed his charge, reflected Rice's sex-based compensation decisions. 42 U.S.C. § 2000e-5(e)(3)(A).

31. Plaintiff repeatedly objected to this unequal treatment.

32. On January 15, 2025, he requested a meeting with Rice's Human Resources department to report sex-based harassment and discrimination.

33. He met with Human Resources on February 5, 2025, and complained about Dr. Kirienko's treatment of him because he was male.

34. Only twenty days later, on February 25, 2025, Dr. Kirienko informed Plaintiff that his position would be eliminated because of a purported lack of funding.

35. Dr. Kirienko did not give Plaintiff a termination date or any written notice of termination at that time, and Plaintiff continued in his position and performed his regular duties for months afterward.

36. In the same discussion, she stated that the funding would instead be used to hire a less-qualified female employee.

37. Rice's funding explanation was false: the funds Rice claimed were unavailable to support Plaintiff's position were used to hire a female employee.

38. Rice replaced him with a less-qualified female employee rather than retain him under the existing funding.

39. The female Research Assistant, Chandi Chopra, assumed Plaintiff's laboratory management duties after his removal. She was a student with no post-graduate experience as a research assistant, while Plaintiff had more than nine years of experience managing the laboratory.

40. After Plaintiff complained to Human Resources, Dr. Kirienko continued to undermine his professional standing.

41. On April 11, 2025, she removed his name from a research paper to which he had made substantial contributions.

42. On April 14, 2025, she made disparaging statements about him to university officials.

43. In or around April of 2025, a female coworker who had made sexually explicit comments in the laboratory lodged a sexual-harassment complaint against Plaintiff with Dr. Kirienko's support.

44. The complaint was not sustained.

45. Rice did not subject the female coworker to comparable scrutiny for her own workplace comments.

46. On May 9, 2025, Dr. Kirienko required Plaintiff to submit an hour-by-hour plan of his work, a requirement not imposed on his female coworkers or on other exempt employees.

47. When Plaintiff sought compensatory time on May 11, 2025, for weekend work he had performed, she denied his request and directed him to use his accrued leave instead.

48. On May 16, 2025, Dr. Kirienko again demanded an hour-by-hour work schedule, threatened to restrict Plaintiff's after-hours access to the laboratory, and withdrew his authority to make routine laboratory purchases.

49. These restrictions were not imposed on his female coworkers.

50. On June 24, 2025, Rice barred Plaintiff from entering the laboratory, preventing him from performing his ordinary duties even though he had not yet received a final termination notice.

51. On July 16, 2025, Rice summoned Plaintiff to a meeting with Human Resources.

52. During the meeting, Rice told him he no longer worked for the university, brought campus police into the room, and threatened him with arrest for trespassing if he remained on campus.

53. Although Rice excluded Plaintiff from the workplace on July 16, 2025, its written termination notice identified August 28, 2025, as his final employment date.

54. Rice communicated its final decision to terminate Plaintiff's employment on July 16, 2025, and later delivered the written termination notice. Rice did not permit Plaintiff to work after July 16, 2025.

55. Rice failed to correct the disparate treatment following Plaintiff's complaints.

56. Instead, it announced the elimination of his position, directed the purportedly unavailable funding toward a female replacement, imposed additional restrictions, and ended his employment.

57. Following Plaintiff's termination, Dr. Kirienko continued to retaliate against Plaintiff in connection with his attempts to secure alternative employment.

58. Dr. Kirienko told prospective employers that had tentatively agreed to hire Plaintiff not to do so. After her statements, those employers did not hire Plaintiff.

59. The funding explanation, sex-based statements, unequal treatment of female employees, and timing of Rice's decisions support Plaintiff's allegations of intentional discrimination and retaliation.

60. On January 5, 2026, Plaintiff filed a Charge of Discrimination against Rice with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 460-2026-02718, alleging sex discrimination (including unequal pay), retaliation, and a hostile work environment as continuing violations. In the charge, Plaintiff expressly requested that it be filed with the Texas Workforce Commission Civil Rights Division ("TWC") as well as the EEOC.

61. Plaintiff filed his charge within 300 days after Rice's final termination decision and the other discrete discriminatory and retaliatory acts that occurred on or after March 11, 2025, and within 180 days after his July 16, 2025 termination. Rice's earlier conduct is pleaded as part of its continuing hostile work environment and as background evidence of its discriminatory and retaliatory motive.

62. On September 29, 2026, the EEOC issued its Determination and Notice of Rights, which Plaintiff received on or about September 29, 2026. Plaintiff filed this suit within ninety days after receiving that notice. 42 U.S.C. § 2000e-5(f)(1).

63. On October 28, 2026, the TWC issued its Notice of Complainant's Right to File Civil Action, which Plaintiff received on or about October 28, 2026. Plaintiff filed this suit within sixty days after receiving that notice and within two years after filing his charge. Tex. Lab. Code §§ 21.252, 21.254, 21.256.

64. As a result of Rice's unlawful conduct, Plaintiff has suffered and will continue to suffer damages in the form of back pay, front pay, lost fringe benefits, compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, damage to his professional opportunities, loss of enjoyment of life, and other nonpecuniary losses.

## III. COUNT ONE: SEX DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 2000e-2(a)

65. Plaintiff adopts by reference all of the facts set forth above. See Fed. R. Civ. P. 10(c).

66. During Plaintiff's employment, Rice was an "employer" within the meaning of 42 U.S.C. § 2000e(b).

67. Under Title VII, it is an unlawful employment practice for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's … sex[.]" 42 U.S.C. § 2000e-2(a)(1).

68. Defendant intentionally discriminated against Plaintiff because he is male, including by compensating him less favorably than female employees, denying benefits and leave afforded to female employees, assigning him unequal work, removing his name from a research paper, imposing hour-by-hour work plans and other restrictions not imposed on female coworkers, withdrawing his purchasing authority, denying him compensatory time,

barring him from the laboratory, eliminating his position while directing the purportedly unavailable funds toward a female replacement, and terminating his employment.

69. Each of these actions harmed Plaintiff with respect to an identifiable term, condition, or privilege of his employment, including his compensation, schedule, duties, leave, workplace access, professional credit, and continued employment.

70. Plaintiff's sex was a but-for cause of each of these actions. In the alternative, Plaintiff's sex was a motivating factor for each of these actions, even if other factors also motivated them. 42 U.S.C. §§ 2000e-2(m), 2000e-5(g)(2)(B).

71. Rice treated female employees more favorably under comparable circumstances. Dr. Kirienko's statements that females worked better than males and that Plaintiff's wife was more valuable than he was provide further evidence that sex motivated the decisions concerning his employment.

72. Rice acted with malice or with reckless indifference to Plaintiff's federally protected rights. Dr. Kirienko acted as Rice's managerial agent within the scope of her employment, and Rice did not make good faith efforts to comply with Title VII, including by failing to act on Plaintiff's complaints to Human Resources. 42 U.S.C. § 1981a(b)(1).

73. As a result of the Title VII violation(s) described above, Defendant is liable to Plaintiff for compensatory damages (emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, both in the past and in the future) and punitive damages, back pay (including interest on back pay), front pay (or, in the

alternative, reinstatement), attorney's fees, expert fees, and costs under Title VII. *See* 42 U.S.C. §§ 1981a(a)(1), 1981a(b), 2000e-5(g), 2000e-5(k).

## IV. COUNT TWO: RETALIATION IN VIOLATION OF 42 U.S.C. § 2000e-3(a)

74. Plaintiff adopts by reference all of the facts set forth above. See Fed. R. Civ. P. 10(c).

75. During Plaintiff's employment, Rice was an "employer" within the meaning of 42 U.S.C. § 2000e(b).

76. Under Title VII, an employer may not retaliate against an employee because the employee "has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a).

77. Plaintiff engaged in protected activity when he complained to Human Resources about discrimination and harassment based on his sex, including his January 15 and February 5, 2025 complaints, and when he complained directly to Dr. Kirienko about her discriminatory treatment.

78. After learning of those complaints, Rice announced the elimination of Plaintiff's position; removed his name from a research paper on April 11, 2025; disparaged him to university officials on April 14, 2025; supported a baseless harassment complaint against him; required hour-by-hour work plans on May 9 and May 16, 2025; denied his request for compensatory time on May 11, 2025; withdrew his purchasing authority; barred him from the

laboratory on June 24, 2025; terminated his employment on July 16, 2025; and, after his termination, told prospective employers that had tentatively agreed to hire him not to do so.

79. Each of these actions, alone and in combination, was materially adverse because it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.

80. Plaintiff complained directly to Dr. Kirienko about her discriminatory treatment, as well as to Human Resources. Dr. Kirienko therefore knew of Plaintiff's protected activity before she took these actions.

81. The twenty-day interval between Plaintiff's February 5 complaint and Dr. Kirienko's February 25 announcement, together with Rice's false funding explanation and its preferential treatment of female employees, supports a causal connection between Plaintiff's protected activity and the adverse treatment.

82. But for Plaintiff's protected activity, Rice would not have taken these actions.

83. Following Plaintiff's termination, Dr. Kirienko continued to retaliate against Plaintiff in connection with his attempts to secure alternative employment.

84. She intentionally urged prospective employers that had tentatively agreed to hire Plaintiff not to do so, to thwart his job prospects.

85. Defendant acted with malice or reckless indifference with respect to the Title VII violation(s) described above. Dr. Kirienko acted as Rice's managerial agent within the scope of her employment, and Rice did not make good faith efforts to comply with Title VII. 42 U.S.C. § 1981a(b)(1).

86. As a result of the Title VII violation(s) described above, Defendant is liable to Plaintiff for compensatory damages (emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, both in the past and in the future) and punitive damages, back pay (including interest on back pay), front pay (or, in the alternative, reinstatement), attorney's fees, expert fees, and costs under Title VII. *See* 42 U.S.C. §§ 1981a(a)(1), 1981a(b), 2000e-5(g), 2000e-5(k).

## V. COUNT THREE: SEX DISCRIMINATION IN VIOLATION OF TEX. LAB. CODE § 21.051

87. Plaintiff adopts by reference all of the facts set forth above. See Fed. R. Civ. P. 10(c).

88. During Plaintiff's employment, Rice was an "employer" within the meaning of Tex. Lab. Code § 21.002(8).

89. Under the TCHRA, an employer "commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer: (1) fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment; or (2) limits, segregates, or classifies an employee or applicant for employment in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any other manner the status of an employee." Tex. Lab. Code § 21.051.

90. Defendant intentionally discriminated against Plaintiff because he is male, including by treating him less favorably than female employees and ending his employment while directing funding toward a female replacement. Rice's earlier differential treatment, including compensation, leave, and assignments, is further evidence of its discriminatory motive.

91. Dr. Kirienko's sex-based remarks, Rice's compensation review, and the contrast between Plaintiff's treatment and the benefits afforded to female coworkers show that Plaintiff's sex was a but-for cause of Rice's decisions or, in the alternative, a motivating factor for them. Tex. Lab. Code § 21.125(a).

92. Defendant acted with malice or reckless indifference with respect to the TCHRA violation(s) described above.

93. As a result of the TCHRA violation(s) described above, Defendant is liable to Plaintiff for compensatory damages (future pecuniary losses and emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, both in the past and in the future) and punitive damages, back pay (including interest on back pay), front pay (or, in the alternative, reinstatement), attorney's fees, expert fees, and costs under the TCHRA. See Tex. Lab. Code §§ 21.258, 21.2585, 21.259.

## VI. COUNT FOUR: RETALIATION BASED ON PROTECTED ACTIVITY IN VIOLATION OF TEX. LAB. CODE § 21.055

94. Plaintiff adopts by reference all of the facts set forth above. See Fed. R. Civ. P. 10(c).

95. During Plaintiff's employment, Rice was an "employer" within the meaning of Tex. Lab. Code § 21.002(8).

96. Under the TCHRA, "[a]n employer commits an unlawful employment practice if the employer[] … retaliates or discriminates against a person who, under this chapter: (1) opposes a discriminatory practice; (2) makes or files a charge; (3) files a complaint; or (4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing." Tex. Lab. Code § 21.055.

97. Plaintiff opposed sex discrimination when he sought assistance from Human Resources on January 15, 2025, and complained on February 5, 2025, about Dr. Kirienko's sex-based harassment and unequal treatment.

98. Defendant retaliated against Plaintiff by announcing his position's elimination, increasing scrutiny of his work, restricting his duties and laboratory access, terminating his employment, and urging prospective employers not to hire him after he complained about discriminatory treatment.

99. The close timing of the position-elimination announcement, the allocation of funds to a female replacement, and the ensuing restrictions and removal from work support a causal connection between his discrimination complaints and Defendant's actions.

100. But for Plaintiff's protected activity, Rice would not have taken these actions.

101. Following Plaintiff's termination, Dr. Kirienko continued to retaliate against Plaintiff in connection with his attempts to secure alternative employment.

102. She intentionally provided Plaintiff's prospective employers false and negative information to thwart his job prospects.

103. Defendant acted with malice or reckless indifference with respect to the TCHRA violation(s) described above.

104. As a result of the TCHRA violation(s) described above, Defendant is liable to Plaintiff for compensatory damages (future pecuniary losses and emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, both in the past and in the future) and punitive damages, back pay (including interest on back pay), front pay (or, in the alternative, reinstatement), attorney's fees, expert fees, and costs under the TCHRA. See Tex. Lab. Code §§ 21.258, 21.2585, 21.259.

## VII. COUNT FIVE: HOSTILE WORK ENVIRONMENT BASED UPON SEX IN VIOLATION OF 42 U.S.C. § 2000e-2(a)(1)

105. Plaintiff adopts by reference all of the facts set forth above. See Fed. R. Civ. P. 10(c).

106. Title VII prohibits discrimination with respect to the terms, conditions, or privileges of employment because of sex, which includes requiring an employee to work in a discriminatorily hostile or abusive environment. 42 U.S.C. § 2000e-2(a)(1); Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993).

107. Defendant, through Dr. Kirienko and other laboratory personnel, subjected Plaintiff to unwelcome harassment because he is male. Dr. Kirienko repeatedly announced a preference for female workers, belittled Plaintiff before his coworkers, disparaged the value of

his work, and singled him out for demeaning personal duties and less favorable treatment than female employees.

108. That conduct was repeated over a substantial period and was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and create a hostile or abusive working environment. The harassment involved both public humiliation and materially unequal work requirements.

109. Dr. Kirienko was Plaintiff's supervisor, empowered by Rice to take tangible employment actions against him. Her harassment culminated in tangible employment actions, including the elimination of Plaintiff's position and his termination, and Rice is therefore vicariously liable for it. In the alternative, Rice knew or should have known of the harassment and failed to take prompt remedial action.

110. Rice knew of the sex-based harassment through Plaintiff's complaints to Human Resources, including his February 5, 2025 meeting, and through the acts of its supervisor. Rice failed to take prompt and effective corrective action. Instead, Plaintiff's position was targeted for elimination after he complained.

111. As a result of Defendant's harassment and hostile work environment, Plaintiff has suffered and expects to suffer pecuniary losses, including but not limited to lost wages and benefits associated with his employment.

112. As a further result of Defendant's harassing conduct, Plaintiff has suffered non-pecuniary losses, including humiliation, damage to professional and personal reputation, undue stress, anxiety, mental distress and anguish, and other non-pecuniary losses.

113. Rice acted with malice or with reckless indifference to Plaintiff's federally protected rights, entitling him to punitive damages under 42 U.S.C. § 1981a(b)(1).

## VIII. COUNT SIX: HOSTILE WORK ENVIRONMENT BASED ON SEX IN VIOLATION OF TEX. LAB. CODE § 21.051

114. Plaintiff adopts by reference all of the facts set forth above. See Fed. R. Civ. P. 10(c).

115. Rice's conduct described in Count Five also violated Tex. Lab. Code § 21.051, which prohibits discrimination "in connection with compensation or the terms, conditions, or privileges of employment" because of sex.

116. The hostile work environment continued into the 180 days before Plaintiff filed his charge, including the July 16, 2025 meeting at which Rice summoned campus police, told Plaintiff he no longer worked for the university, and threatened him with arrest.

117. As a result, Plaintiff suffered the pecuniary and nonpecuniary losses described in Count Five. Rice acted with malice or with reckless indifference to Plaintiff's state-protected rights, entitling him to compensatory and punitive damages under Tex. Lab. Code § 21.2585.

## IX. ATTORNEY'S FEES & COSTS

118. Plaintiff adopts by reference all of the facts set forth above. See Fed. R. Civ. P. 10(c).

119. Plaintiff is authorized to recover attorney's fees and costs on his claims by statute and under principles of equity. *See, e.g.*, 42 U.S.C. § 2000e-5(k); Tex. Lab. Code § 21.259.

120. Plaintiff has retained the professional services of the undersigned attorneys.

121. Plaintiff has complied with the conditions precedent to recovering attorney's fees.

122. Plaintiff has incurred or may incur attorney's fees in bringing this lawsuit.

123. The attorney's fees incurred or that may be incurred by Plaintiff were or will be reasonable and necessary.

## X. CONDITIONS PRECEDENT

124. All conditions precedent have been performed or have occurred.

## XI. JURY DEMAND

125. Plaintiff demands a trial by jury on all issues triable to a jury.

## XII. PRAYER

Plaintiff respectfully requests that the Court enter a judgment in his favor that provides the following relief:

a. judgment against Defendant for lost wages and benefits, including back pay and interest on back pay, resulting from the discriminatory actions of Defendant;

b. reinstatement to his former position or, in the alternative, front pay;

c. compensatory damages for mental anguish in the past and future, injury to his reputation, adverse effects on his career, and diminished earning capacity resulting from the discriminatory actions of Defendant;

d. punitive damages in the amount found by the trier of fact to punish and deter continuation of Defendant's unlawful employment practices;

e. an award of reasonable and necessary attorney's fees and expert fees, as authorized by 42 U.S.C. § 2000e-5(k) and Tex. Lab. Code § 21.259, and all costs of court;

f. prejudgment interest as provided by law;

g. postjudgment interest as provided by law; and

h. such other and further relief, at law or in equity, to which Plaintiff may show himself justly and lawfully entitled.

Respectfully Submitted,

MOORE & ASSOCIATES
Lyric Centre
440 Louisiana Street | Suite 1110
Houston, Texas 77002-1055
Telephone: (713) 222-6775
Facsimile: (713) 222-6739

By: ______________________
Melissa Moore
State Bar No. 24013189
Federal Id. No. 25122
melissa@mooreandassociates.net

Curt Hesse
State Bar No. 24065414
Federal Id. No. 968465
curt@mooreandassociates.net

**ATTORNEYS FOR PLAINTIFF**